# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| NORTHEAST ANIMAL SHELTER, INC., | |
| Plaintiff, | CIVIL ACTION NO. 20-10112 |
| v. | |
| NBT BANK, N.A., | |
| Defendant. | |

## COMPLAINT

### PARTIES

1. Plaintiff Northeast Animal Shelter, Inc. (the "Shelter") is a nonprofit corporation formed under the laws of the Commonwealth of Massachusetts, having its principal place of business at 347 Highland Avenue, Salem, Massachusetts 01970.

2. Defendant NBT Bank, N.A. ("Defendant") is a federally chartered banking institution/exempt mortgage loan servicer duly authorized to do business in the Commonwealth of Massachusetts but having its principal place of business at 52 South Broad Street, Norwich, New York 13815.

### JURISDICTION

3. This Court has jurisdiction under 28 U.S.C. § 1332 based on diversity of citizenship and because the amount in controversy exceeds $75,000.00.

4. Venue in this District is appropriate under 28 U.S.C. § 1391.

## FACTS

5. Defendant is the Trustee of an *inter vivos* trust, the Mabel Decker Trust for the benefit of R. Mark Decker (the "Trust").

6. NBT assumed the role of Trustee on or about August 22, 2014.

7. NBT was appointed as the Executor of the Estate of Mabel Decker by Decree of the New York Surrogate's Court, Broome County.

8. On or about February 24, 2005, Ronald F. Decker ("Ronald") and Mabel M. Decker ("Mabel") executed an agreement creating the Trust, which is an *inter vivos* trust. A copy of the Trust is filed herewith as Exhibit A.

9. Also on or about February 24, 2005, Mabel executed a pour-over Last Will and Testament (the "Will") providing for the distribution upon death of all of her probate property into the Trust. The Will was admitted to probate by Decree on September 15, 2016.

10. The Trust was initially funded by cash at its creation.

11. The Trust named Mabel as Trustee. If she resigned or was otherwise unable to act as trustee, Defendant was named successor trustee.

12. During the lives of Ronald and Mabel, and the survivor of each, the net income of the Trust was to be distributed for the benefit of Ronald and/or Mabel at least quarterly.

13. Under the Trust agreement, if a successor trustee is appointed for Mabel during her life, the successor trustee has discretion to distribute principal for the benefit of Ronald or Mabel.

14. Upon the death of the survivor of Ronald or Mabel, the net income of the Trust was to be distributed to the Deckers' son, R. Mark Decker ("Mark") for his health, support, maintenance, and welfare.

15. Under the Trust agreement, the Trustee is also authorized to distribute the principal of the Trust for Mark's health, support, maintenance, and welfare.

16. Upon Mark's death, the Trust is to terminate, with the remainder to be distributed in equal shares to: (1) the Best Friends Animal Society, (2) the Vestal Central School District Dollars for Scholars General Fund, and (3) the Shelter.

17. Ronald died on October 5, 2009, leaving Mabel as the sole income beneficiary of the Trust.

18. Upon information and belief, Mabel resigned as Trustee on or about February 18, 2014 due to failing health, and Defendant became Trustee on or about August 22, 2014.

19. Mabel died on July 1, 2015, and Mark became the sole income beneficiary of the Trust.

20. Defendant was appointed as Executor of the Estate of Mabel Decker on September 15, 2016.

21. Mark died on January 6, 2019.

22. Because of Mark's death, the remaining Trust assets are to be divided equally among the entities listed above, with one-third of the Trust assets to be provided to each of: (1) the Best Friends Animal Society, (2) the Vestal Central School District Dollars for Scholars General Fund, and (3) the Shelter.

23. A trustee who acts in two capacities – in this case, as a trustee and as an executor – is accountable under principles of breach of fiduciary duty to trust beneficiaries for actions taken in either capacity which affect the trust beneficiaries. In other words, a trustee cannot disclaim liability for actions which harm the trust beneficiaries solely on the basis that the trustee was acting in a separate capacity when the action was taken.

24. This complaint arises from actions and omissions by Defendant both as Executor of the Estate of Mabel Decker and as Trustee of the Trust which constituted breaches of Defendant's fiduciary duty which harmed the Shelter by reducing the value of the Trust and therefore the assets available for distribution.

25. Defendant is an entity with professional investment expertise.

26. As a professional investment manager and administrator, Defendant is held to a higher standard of care in the management and administration of the Trust.

27. Over the course of the administration of the Trust, Defendant failed to earn a reasonable rate of return and failed to achieve an appreciation of value of the assets, such that even after adjusting to reflect distributions to beneficiaries and administrative expenses, the Trust assets lost value under the management of Defendant.

28. During the approximately five years it served as Trustee, Defendant bought and sold investments at an unreasonable rate.

29. According to an accounting prepared by Defendant, over the course of the approximately five years, Defendant engaged in purchase and sale transactions of more than $4 million, with approximately $1 million in assets, thus entirely turning over the account approximately four times.

30. As a result of this churning of the account, the Trust incurred losses, excessive costs and fees, and was not prudently invested.

31. Upon information and belief, this churning of the account resulted in additional financial benefit to Defendant and/or its affiliated entities, and therefore was undertaken for the benefit of Defendant and to the detriment of the beneficiaries including the Shelter.

32. As another example, without limitation, of the acts constituting a failure to prudently manage the assets, Defendant sold the property at 25 Grandview Avenue, Binghamton New York, which was listed on the Trust accounting as having a value of $168,000, for $57,200. Alternatively, in the event the sale price was the true fair market value, Defendant's inclusion of the excessively high value on the accounting enabled greater fees for Defendant, which are calculated as a percentage of the total value of assets.

33. As another example, without limitation, of the acts constituting a failure to prudently manage the assets, Defendant appears to have failed to appropriately diversify the trust holdings, including without limitation by maintaining an excessive concentration of bonds.

34. As another example, without limitation, of the acts constituting a failure to prudently manage the assets, Defendant failed to invest in assets which would generate a sufficient income for the income beneficiaries without requiring distributions of principal. This harmed the remainder beneficiaries including the Shelter, because distributions of principal reduced the amount that would ultimately be available for distribution to the remainder beneficiaries.

35. Defendant in this way and in other ways failed to appropriately balance the interests of the income beneficiaries with the interests of the remainder beneficiaries.

36. According to its accounting, Defendant made improper distributions from the Trust to the Estate of Mabel Decker, in the amount of $116,025, when the estate debts and liabilities were at most $11,534.85. This distribution was not authorized under the Trust and made little sense as the Will provided that any funds in the Estate would be poured over into the Trust.

37. It does not appear from the accounting that those assets or proceeds were ever returned to the Trust.

38. As Defendant was both the Executor and the Trustee, Defendant's transfer from the Trust to the Estate would have increased the Executor commissions and would otherwise have benefited Defendant to the detriment of the remainder beneficiaries, including the Shelter.

39. Defendant incurred excessive administration costs, to the tune of $383,542.78, over the course of its administration of the Trust.

40. Defendant incurred and received excessive commission and fees, upon information and belief, as Executor and as Trustee, including without limitation by engaging in unnecessary transfers into the Trust and back out of the Trust such as occurred on December 31, 2014, thereby increasing fees and commissions, and by taking fees and commissions both as Executor and as Trustee for paper transfers between the Estate and the Trust for which commissions in both capacities should not have been taken under New York law.

41. As another example, without limitation, of the acts constituting a failure to prudently manage the assets of the Trust, Defendant imprudently liquidated assets such as, but without limitation, the Loomis asset with an inventory value of $102,000, which was sold for a loss on December 8, 2015, a mere one week before a capital gains distribution was scheduled to be made.

42. As another example of imprudent liquidations, Defendant failed to create a plan to liquidate bonds held in the Trust gradually over the course of the lives of Mabel and Mark.

43. In addition, Defendant's choice as Executor to liquidate the certain bonds held in Mabel's individual name at death, and the resulting income tax burden imposed on the Trust as a

result of Defendant's choices as Executor and Trustee in connection with the liquidation of the bonds, was a failure to prudently manage the assets of the trust.

44. Defendant both as Executor and as Trustee failed to undertake sufficient analysis and plan appropriately with respect to many issues, including the question of liquidation or retention of assets, the selection among different assets for liquidation or reinvestment in light of the needs of the current income beneficiaries versus those of the remainder beneficiaries, methods of limiting tax liability, and what generally would be in the best interests of all the beneficiaries, including the remainder beneficiaries.

45. Defendant took other actions constituting imprudent administration and imprudent management of the investments which resulted in a waste of Trust assets.

46. Defendant failed to undertake proper tax liability planning, including without limitation failing to make an election under Internal Revenue Code section 645 (26 U.S.C. § 645) and by its decision with respect to the allocation of income between the Estate and the Trust.

47. Defendant as Trustee failed to take steps to appropriately marshal assets which were to be in the Trust by facilitating the transfer of bonds into the Trust and out of Mabel's individual name, by searching for whether Mabel had an agent under a power of attorney who could act for her, or by proceeding with the appointment of a fiduciary who could have enabled the transfer, all of which would have allowed Defendant to more appropriately manage the Trust assets.

48. Defendant's actions have caused the Trust to pay excessive taxes in recent years, resulting in an avoidable and needless reduction in Trust assets.

49. This avoidable and needless reduction in Trust assets is due to Defendant's mismanagement of the Trust.

50. As Executor, Defendant sold the bonds that were not in the name of the Trust nearly two years after Mabel died, on January 18, 2017.

51. Upon information and belief, Defendant sold these bonds in its capacity as Executor of the Estate of Mabel Decker. However, for reporting purposes, all of the sale proceeds were allocated to the Trust for tax year 2017. This allocation was improper and resulted in adverse tax consequences.

52. The sale of these bonds all at once generated a tremendous amount of income for the Trust at one time.

53. Due to the sale of these bonds, the Trust's adjusted gross income for 2017 was approximately $560,154.00, causing the Trust to incur a federal tax liability of approximately $236,312.00.

54. For reference, the Trust's federal tax liability for tax year 2016 was approximately $59.00.

55. According to an accounting generated by Defendant, the balance of the Trust, as of February 2019 was $1,031,838.66. Therefore, the large tax payment for tax year 2017 was not just out of proportion to the tax liability incurred in other years, it also represented a large percentage of the Trust assets.

56. Numerous methods were available to Defendant to avoid the large tax liability the Trust incurred in 2017.

57. Defendant did not avail itself of any of the methods by which it could have avoided the aforementioned tax year 2017 liability: selling bonds owned by Mabel during her life, selling bonds in the year of Mabel's death such that the bond income could have been claimed on Mabel's final income tax return instead, making required payments to Mark during

his life to deplete Trust assets, and utilizing section 645 under the Internal Revenue Code to treat an estate and trust as one and the same for tax purposes within the first two years of decedent's death (thereby enabling a fiduciary to allocate tax liability over multiple tax years, instead of just one).

58. Moreover, no documentation has been shown to Plaintiff to indicate that Defendant considered but rejected employing any methods of reducing tax liability. To that end, Defendant failed to act with the care and diligence that is expected of a fiduciary who is a professional investment adviser.

59. Because the Trust incurred massive and avoidable tax liability for tax year 2017, fewer Trust assets were available to pass on to the remainder beneficiaries, including the Shelter, upon Mark's death.

60. In fact, all of the aforesaid acts and omissions by Defendant resulted in harm to the Shelter by reducing the Trust assets available for distribution to the Shelter.

61. As a result of Defendant's imprudent management and administration of the Trust assets and Defendant's breach of the fiduciary duties of care and loyalty to the remainder beneficiaries, the Trust is worth approximately $480,000.00 less than it otherwise would have been.

## COUNT I – BREACH OF THE FIDUCIARY DUTY OF CARE

62. The Shelter hereby repeats and realleges the facts contained in paragraphs 1 through 61 and incorporates those factual allegations herein.

63. As Trustee, Defendant owed a fiduciary duty of care to the Shelter, a remainder beneficiary of the Trust, which was breached by the waste of Trust assets and the creation of unnecessary and avoidable tax liability by all of the acts and omissions set forth above.

64. As a result of Defendant's breach of the fiduciary duty of care, Plaintiff has been damaged in an amount that exceeds $75,000.00, and should be compensated for same, including lost investment opportunity, and Defendant should further be surcharged for attorneys' fees resulting from the breach.

## COUNT II – BREACH OF THE FIDUCIARY DUTY OF LOYALTY

65. The Shelter hereby repeats and realleges the facts contained in paragraphs 1 through 64 and incorporates those factual allegations herein.

66. As Trustee, Defendant owed a fiduciary duty of loyalty to the Shelter, a remainder beneficiary of the Trust, which it breached by wasting Trust assets and creating unnecessary and avoidable tax liability.

67. Defendant also breached its fiduciary duty of loyalty to the Shelter by taking actions which benefited Defendant to the detriment of the Shelter, including but not limited to those set forth above.

68. Defendant also breached its fiduciary duty of loyalty to the Shelter by failing to appropriately balance the interests of the remainder beneficiaries with the interests of the income beneficiary, including but not limited to as set forth above.

69. Defendant's breaches damaged the Shelter by reducing the amount of assets in the Trust for distribution to the Shelter.

## COUNT III – UNJUST ENRICHMENT

70. The Shelter hereby repeats and realleges the facts contained in paragraphs 1 through 69 and incorporates those factual allegations herein.

71. As a result of Defendant's misconduct alleged herein, Defendant unjustly received a benefit at the expense of the Trust's remainder beneficiaries, including the Shelter.

72. That benefit consists of fees and commissions retained by Defendant arising from its unreasonable and imprudent churning of the Trust account when it engaged in purchase and sale transactions of more than $4 million, with approximately $1 million in assets, thus turning over the account approximately four times.

73. That benefit also consists of asset value-based fees and commissions retained by Defendant arising from its inflated valuation of the Trust's Binghamton property in the amount of $168,000 on the Trust's accounting even though the property was sold by Defendant for $57,200.

74. These financial benefits resulted from Defendant's misconduct alleged herein to the detriment of the Shelter, and it would be unjust to allow Defendant to retain such financial benefit as a result of its breaches of the fiduciary duties of care and loyalty.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Northeast Animal Shelter, Inc. requests that this Court:

1. Enter judgment that Defendant NBT Bank, N.A. breached its fiduciary duties of care and loyalty to Northeast Animal Shelter, Inc. and has been unjustly enriched and award damages in an amount sufficient to fully compensate the Shelter for the harm caused by Defendant NBT Bank, N.A.;

2. Disgorge Defendant NBT Bank, N.A. of the fees and commissions charged to the Trust arising from its misconduct;

3. Award pre-judgment and post-judgment interest to Northeast Animal Shelter at the maximum rate allowable by law;

4. Award attorneys' fees and costs to Northeast Animal Shelter; and,

5. Grant such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Northeast Animal Shelter, Inc. hereby requests trial by jury as to all issues so triable.

    Respectfully submitted,

    NORTHEAST ANIMAL
    SHELTER, INC.

    By its attorneys,

    /s/ Alan D. Rose, Jr.
    Alan D. Rose, Jr. (MA #628871)
    Sammy S. Nabulsi (MA #691503)
    ROSE LAW PARTNERS LLP
    One Beacon Street, 23rd Floor
    Boston, MA 02108
    (617) 536-0040 (Office)
    (617) 536-4400 (Fax)
    adrjr@rose-law.net
    ssn@rose-law.net

    *Of counsel*

    /s/ Cecelia R.S. Cannon, Esq.
    Cecelia R.S. Cannon, Esq. (#515626)
    Gregory D. Eriksen (#517205)
    BOUSQUET HOLSTEIN, PLLC
    110 West Fayette Street, Suite 1000
    Syracuse, NY 13202
    (315) 422-1500
    ccannon@bhlawpllc.com
    geriksen@bhlawpllc.com

    (Pro hac vice application to be submitted)

Dated: January 17, 2020